JONATHAN ZAVIN (*pro hac vice*)
jzavin@loeb.com
DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
EDWARD K. LEE (SBN 294954)
elee@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendants
FOX SEARCHLIGHT PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, TSG ENTERTAINMENT FINANCE, LLC, GUILLERMO DEL TORO and DANIEL KRAUS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID ZINDEL, as Trustee for the David Zindel Trust and the Lizabeth Zindel Trust,

Plaintiff,

v.

FOX SEARCHLIGHT PICTURES, INC., a Delaware corporation; TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; TSG ENTERTAINMENT FINANCE LLC, a Delaware limited liability company; MACMILLAN PUBLISHERS, LTD., a subsidiary of a German limited liability company; GUILLERMO DEL TORO, an individual; DANIEL KRAUS, an individual; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:18-cv-01435-PA-KSx

Assigned to Hon.: Percy Anderson

**FILM DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 17 U.S.C. § 505**

*[Concurrently filed: Notice of Motion and Motion; Declaration of Jonathan Zavin; [Proposed] Order Granting Motion.]*

Date: October 29, 2018
Time: 1:30 pm
Place: Courtroom 9A

Complaint Filed: February 21, 2018

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. DISCUSSION ........ 2
A. Attorneys' Fees ........ 2
B. The Film Defendants Are Entitled to Recover Attorneys' Fees Expended in Connection With The Defense of This Lawsuit. ........ 4
1. Degree of Success. ........ 4
2. Frivolousness. ........ 5
3. Motivation. ........ 6
4. Objective Unreasonableness. ........ 7
5. Deterrence And Upholding The Goals of The Copyright Act. ........ 10
6. Balancing The Factors. ........ 11
C. Reasonableness of the Amount of Fees Requested. ........ 12
III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 12

*Counts v. Meriwether*,
No. 2:14-00396-SVW-CW, 2016 U.S. Dist. LEXIS 40651 (C.D. Cal. Mar. 9, 2016) .......... 4

*DuckHole Inc. v. NBCUniversal Media LLC*,
No. CV-12-10077-BRO, 2013 WL 5797204 (C.D. Cal. Oct. 25, 2013) .......... 5, 8, 12

*Entm't Res. Group, Inc. v. Genesis Creative Group, Inc.*,
122 F.3d 1211 (9th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998) .......... 2, 3

*Fantasy, Inc. v. Fogerty*,
94 F.3d 553 (9th Cir.1996) .......... 3, 5

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) .......... *passim*

*Gable v. NBC*,
No. CV-08-4013 SVW, 2010 U.S. Dist. LEXIS 150588 (C.D. Cal. Aug. 6, 2010) .......... 4

*Goldberg v. Cameron*,
No. C-05-03523 RMW, 2011 WL 3515899, *7 (N.D. Cal. Aug. 11, 2011) .......... 12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 12

*Hirsch v. Compton Un. Sch. Dist.*,
No. CV 12–01269 RSWL, 2013 WL 1898553, *3 (C.D. Cal. May 3, 2013) .......... 13

*Identity Arts v. Best Buy Enter.*,
No. C 05-4656 PJH, 2008 U.S. Dist. LEXIS 119865 (N.D. Cal. Mar. 26, 2008) .......... 11

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct 1979 (2016) .......... 7, 8

*Maljack Prods, Inc. v. Goodtimes Home Video Corp.*, 81 F.3d at 881 (9th Cir. 1996) .......... 4

*Mallery v. NBC Universal*, 331 F. App'x 821 (2d Cir. June 3, 2009) (Unpub. Disp.) .......... 8

*Mattel, Inc. v. MGA Ent., Inc.*, No. CV 04–9049 DOC, 2011 WL 3420603 (C.D. Cal. Aug. 4, 2011) .......... 10

*Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC (RNBx); 2011 U.S. Dist. LEXIS 85998, at *38-39 (C.D. Cal. Aug. 4, 2011) .......... 14

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007) .......... 3

*Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11- 07098-AB, 2015 WL 1746484, *8 (C.D. Cal. Mar. 24, 2015) .......... 5, 12, 13

*Ryan v. Editions Ltd. West*, 786 F.3d 754 (9th Cir. 2015) .......... 14

*Scott v. Meyer*, No. CV 09-6076 ODW, 2010 WL 2569286 (C.D. Cal. June 21, 2010) .......... 10

*Shame on You Prods. v. Banks*, No. CV 14-03512-MMM (JCx) (C.D. Cal. Aug. 15, 2016) .......... 7

*Shame on You Prods. v. Banks*, 893 F.3d 661 (9th Cir. 2018) .......... *passim*

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) .......... 3

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273 (9th Cir. 2013) .......... 10

*Trulock v. Hotel Victorville*, 92 Fed. Appx. 433 (9th Cir. 2004) .......... 14

*Williams v. Crichton*, 891 F. Supp. 120 (S.D.N.Y. 1994) .......... 8

*Zobmondo Entm't LLC v. Falls Media LLC*, No. CV 06-3459 ABC, 2009 U.S. Dist. LEXIS 9306 (C.D. Cal. Jan. 23, 2009) .......... 11

**Statutes**

Copyright Act .......... 5

Copyright Act § 505 .......... 2

**Other Authorities**

Fed. R. Civ. P. 54(d)(2)(B) .......... 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

*The Shape of Water* (the "Film") was released on December 1, 2017. It received an overwhelmingly positive response from both critics and audiences and garnered a tremendous amount of publicity. Plaintiff filed this meritless claim, based on numerous false allegations of "substantial similarity" in February of 2018, while the Film was under consideration for thirteen Academy Awards. The Film Defendants filed a motion to dismiss, addressing and refuting the dozens of Plaintiff's alleged "similarities," and the Film Defendants' motion to dismiss was granted after the Court held that, as a matter of law, there was no substantial similarity between the Film and Plaintiff's father's 1969 play called "Let Me Hear You Whisper" (the "Play").

Attorneys' fees are to be awarded to a prevailing defendant, in the Court's discretion, if the successful defense of an infringement claim furthers the purposes of the Copyright Act. Here, the relevant factors, including objective unreasonableness, the Film Defendants' success, Plaintiff's motivation, and the goals of the Copyright Act, all support an award of fees. First, the prosecution of this lawsuit was objectively unreasonable. There was no legal basis for Plaintiff's claim that the works were "substantially similar" in protectable expression. Second, the Film Defendants achieved complete success in obtaining a dismissal of all of Plaintiff's copyright claims. Third, Plaintiff's motivation was obvious – he attempted to coerce a financial settlement from the Film Defendants by first making a claim and then, when Defendants rejected that claim, filing this unreasonable lawsuit on the eve of the Academy Awards. Plaintiff tried to extract money from the Film Defendants not based on the merit of his claim, but based on the threat of negative publicity and disparagement tied to the Academy Awards. In furtherance of that effort, Plaintiff manufactured numerous claimed similarities that, upon examination by Defendants and the Court, were proven not to exist. Finally, the

goals of the Copyright Act were served in this case. The Copyright Act protects expression, but makes clear that ideas are not protectable, and may not form the basis of a claim for infringement. Here, the Film Defendants acted to protect creative artists from the chilling effect that would exist if third parties could demand payment based on the claim that a new work contained similar "ideas" to the claimant's prior work.

For the reasons set forth herein, the Film Defendants request that the Court award the attorneys' fees requested.

## II. DISCUSSION

### A. Attorneys' Fees

Section 505 of the Copyright Act provides that:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Pursuant to the plain language of this section, attorneys' fees are appropriate and awardable, in the court's discretion.

Courts are given wide latitude to exercise their equitable discretion to award the prevailing party in any copyright action its attorneys' fees. *See, e.g.*, *Entm't Res. Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998). Under the "evenhanded" approach mandated by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the same standard must be applied to prevailing plaintiffs and prevailing defendants in determining whether to award fees under § 505. As the Ninth Circuit explained:

> "Fees are proper under this statute when either successful prosecution or successful defense of the action furthers the purposes of the Copyright Act. *See Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir.1996) ("[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.") (quoting *Fogerty*, 510 U.S. at 527). As such, prevailing defendants as well as prevailing plaintiffs are eligible for such an award, and the

standards for evaluating whether an award is proper are the same regardless of which party prevails. *Fogerty*, 510 U.S. at 534."

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007).

"'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Fogerty*, 510 U.S. at 534 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-437 (1983)). Considerations discussed by the Supreme Court include the Copyright Act's primary objective, "to encourage the production of original literary, artistic, and musical expression for the good of the public," as well as the fact that defendants as well as plaintiffs may hold copyrights, the need to encourage "defendants who seek to advance a variety of meritorious copyright defenses . . . to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement," and the fact that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 524-527.

Some of the factors that a court may look to in making its decision include: "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Entm't Res. Group*, 122 F.3d at 1229; *see also Fogerty*, 510 U.S. at 534 n.19. Notably, such factors are "not exclusive and need not all be met." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) (affirming district court's award of fees after remand from Supreme Court) (explaining that "blameworthiness is not a prerequisite to awarding fees to a prevailing defendant" and upholding award of attorneys' fees to defendant even though plaintiff had pursued the litigation in good faith); *see also Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996)

(upholding award of attorneys' fees even though district court found no frivolousness).

Numerous courts in this District have awarded attorneys' fees to defendants in copyright infringement actions relating to film or television productions. Those fees have been awarded when the works at issue, in spite of the plaintiffs' claims to the contrary, were held to be objectively dissimilar in their expression. Specifically, the Ninth Circuit recently confirmed an award of attorneys' fees in favor of several film defendants after the District Court granted a motion to dismiss on the basis that the works were not substantially similar. *See Shame on You Prods. v. Banks*, 893 F.3d 661, 667 (9th Cir. 2018) (affirming award of attorneys' fees of $314,669 after motion to dismiss had been granted on the basis that the two works at issue "had only isolated plot elements in common").[1]

As set forth below, recent precedent and the relevant guiding factors favor an award of fees incurred by the Film Defendants in this action.

**B. The Film Defendants Are Entitled to Recover Attorneys' Fees Expended in Connection With The Defense of This Lawsuit.**

**1. Degree of Success.**

The Film Defendants clearly meet the first factor, the degree of success obtained, because Plaintiff's suit was dismissed and judgment entered for the defendants. *See Fogerty*, 510 U.S. at 534 n.19. The Ninth Circuit has ruled that defeating a plaintiff's claim either on a motion to dismiss, or a motion for summary judgment, constitutes complete success on the merits. *Maljack Prods, Inc. v.*

[1] Whether the defendants prevailed on a motion to dismiss, or summary judgment, numerous courts have awarded fees after finding that the works at issue only shared superficial similarities. *See Counts v. Meriwether*, No. 2:14-00396-SVW-CW, 2016 U.S. Dist. LEXIS 40651, at *4-5 (C.D. Cal. Mar. 9, 2016) (awarding attorneys' fees in the amount of $768,836.52 where "there were no significant points of similarity as to plot, sequence of events, characters, mood and pace, setting, themes, or dialogue"); *Gable v. NBC*, No. CV-08-4013 SVW (FFMx), 2010 U.S. Dist. LEXIS 150588, at *3 (C.D. Cal. Aug. 6, 2010) (awarding attorneys' fees in the amount of $496,245 where "the only similarities [between the works] related to abstract ideas, which are not protected by the copyright laws").

*Goodtimes Home Video Corp.*, 81 F.3d at 881, 890 (9th Cir. 1996), *Shame on You Productions*, 893 F.3d at 668-69; *see also DuckHole Inc. v. NBCUniversal Media LLC*, No. CV-12-10077-BRO, 2013 WL 5797204, *2 (C.D. Cal. Oct. 25, 2013) ("Th[e] [degree of success] factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense.").

**2. Frivolousness.**

Neither a finding of "frivolousness" or "bad faith" is a prerequisite to an award of attorneys' fees in copyright litigation. *Fantasy*, 94 F.3d at 560; *see also Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11- 07098-AB, 2015 WL 1746484, *8 (C.D. Cal. Mar. 24, 2015) ("[T]he fact that Perfect 10's copyright claims were not frivolous when it filed them in 2011 does not undermine the Court's ultimate conclusion that attorneys' fees would promote the purpose of the Copyright Act and are appropriate in this case"). In fact, the Ninth Circuit, in *Fantasy*, affirmed the award of $1,347,519 in attorneys' fees to a defendant even though the plaintiff's lawsuit was "neither frivolous nor prosecuted in bad faith." 94 F.3d at 556.

Although a finding of "bad faith" is not required, in this case, as the Court found "…Plaintiff's list of similarities includes many over-generalizations of the works, and it often mischaracterizes one or both works." Order p. 16. For example, despite Plaintiff's numerous claims of copyrightable similarity between the characters of the Play and the Film, the Court found that: "the characters in the Play and the Film or Book share few, if any similarities." *Id.*, at 15. As the Film Defendants briefed extensively in connection with their motion to dismiss, many of Plaintiff's alleged similarities rise to the level of frivolousness, and this factor therefore justifies an award of attorney's fees. However, this is just one factor, and whether or not the Court deems this lawsuit to be 'frivolous' is not material to an award of attorneys' fees if that award is supported by the remaining factors.

**3. Motivation.**

Plaintiff first contacted the Film Defendants with his allegations in late-January 2018, approximately one day after the Film received the most Academy Award nominations of any film that year, including Best Picture and Best Original Screenplay. Zavin Decl., ¶6. On the eve of the Academy's final electronic voting period, which is eight days long, Plaintiff informed Defendants that Plaintiff would be filing within a week if his claim was not resolved immediately. *Id.*

Having failed to coerce a settlement, Plaintiff strategically filed this lawsuit, and garnered widespread publicity for his meritless claim in late-February 2018, on the day after the electronic voting for the Academy Awards began. Plaintiff was acutely aware that the Film was nominated for the most Academy Awards of any film and deliberately asserted his claim, and then filed his Complaint, in the midst of a media blitz relating to the Film. It is evident that his timing was designed to maximize pressure on the Film Defendants to settle this meritless suit.

Plaintiff and his counsel also engaged in a publicity campaign that included unfounded statements made to numerous major publications, including Plaintiff's statement that the Film was "obviously derived from" his father's 1969 Play.[2] The Film Defendants did not succumb to this pressure and, as a consequence, spent hundreds of thousands of dollars to defend against Zindel's baseless claim, and achieve a dismissal and judgment in their favor.

There is no question that Plaintiff could have waited weeks or months more before filing this lawsuit.[3] The filing of the lawsuit a mere two weeks later would not have prejudiced, in any way, Plaintiff's <u>legal</u> claims. Indeed, the only reason for Plaintiff's strategically timed threat and the subsequently-filed Complaint was to

[2] https://www.theguardian.com/film/2018/jan/25/shape-of-water-oscars-paul-zindel-similarities

[3] There was absolutely no need for Zindel to file suit at the start of electronic voting for the Academy Awards, because the three-year statute of limitations on his claim still had well over two years to run.

obtain maximum publicity and leverage against Defendants. Thus, the timing of Plaintiff's filing was motivated by non-legal considerations.

This Court has recently held that a plaintiff's attempts to coerce settlement of a baseless claim may be considered in connection with a finding of bad faith/improper motivation. *See* Order, *Shame on You Prods. v. Banks*, No. CV 14-03512-MMM (JCx) (C.D. Cal. Aug. 15, 2016), ECF No. 212 at 20 ("Consequently, the Court finds there is evidence that Plaintiff's motivation for filing suit was not a good faith belief in the merits of its claim, but an attempt to coerce Defendants to pay money to settle a meritless suit. This factor weighs in favor of awarding fees."), *aff'd*, *Shame on You Productions v. Banks*, 893 F.3d 661, 668 (holding that District Court did not abuse its discretion in ruling that attempting to obtain a nuisance settlement was a factor to be considered in concluding the plaintiff acted in bad faith).

While "bad faith" motivation, like frivolousness of the claims, is not necessary to a finding of attorneys' fees, in this case, Plaintiff tried to leverage unique non-legal circumstances through bad faith tactics both in connection with the timing of his complaint, and in connection with his arguments that attempted to mislead the public, and the Court, regarding the true nature of the works at issue. Thus, this factor weighs in favor of the Film Defendants.

**4. Objective Unreasonableness.**

In *Kirtsaeng v. John Wiley & Sons, Inc*., 136 S.Ct 1979, 1985 (2016), the Supreme Court recently addressed the standard for awarding fees under the Copyright Act, and held that, in doing so, district courts should give "substantial weight" to the objective unreasonableness of a losing party's claims. Here, Plaintiff's claims of similarity of protectable expression were based on mischaracterizations of the works, *scenes a faire*, and on out-of-context comparisons. Numerous decisions in this District have held that it is objectively unreasonable for a plaintiff to file a claim based on mere ideas, or on tortured claims of "substantial

similarity" where no similarity of copyrightable expression exists. *See DuckHole Inc.*, 2013 WL 5797204, *4 ("The Court finds Plaintiff was unreasonable in arguing that the protectable elements were substantially similar and that the idea of a sitcom set in an animal hospital was novel enough to support a copyright infringement claim. This factor therefore weighs in favor of Defendants."). The District Court in *Shame On You Productions* also held that the works at issue were not substantially similar and explained that the lack of objective similarity between the works supported an award of attorneys' fees. *See* Order, *Shame on You Prods.*, No. CV 14-03512-MMM (JCx) (C.D. Cal. Aug. 15, 2016), ECF No. 212 at 16 ("[C]ourts have found objective unreasonableness in situations in which 'the lack of similarity between the unsuccessful plaintiff's work and the allegedly infringing work are obvious.'") *aff'd*, 893 F.3d 661; *see also Mallery v. NBC Universal*, 331 F. App'x 821, 822 (2d Cir. June 3, 2009) (Unpub. Disp.) (affirming attorneys' fees award to defendant based on holding that "[t]he context, presentation, plot lines, narrative structure, and styles of the two works are substantially different"); *Williams v. Crichton*, 891 F. Supp. 120, 122 (S.D.N.Y. 1994) (awarding fees after finding objective unreasonableness based on the fact that the similarities asserted by plaintiff "all flow[ed] from the concededly uncopyrightable concept of a dinosaur zoo," and that plaintiff's claim "was based on the comparison of highly selective, scattered details").[4]

This case follows the same pattern as those cited above. Plaintiff Zindel manufactured dozens of claimed "overwhelming similarities," forcing the Court and

4 The Ninth Circuit recently explained that *Kirtsaeng* did not materially alter the standard for awarding fees in a copyright case in this Circuit. Thus, in *Shame on You Productions v. Banks*, the Ninth Circuit affirmed the district court's award of attorneys' fees, and noted that "*Kirtsaeng* did not effect a significant change in the law, and we have upheld pre-*Kirtsaeng* decisions on the basis that *Kirtsaeng* did not require a different result." 893 F.3d 661 at 664. The Ninth Circuit further noted that, "after *Kirtsaeng*, district courts should continue to consider the same [five] factors, but accord substantial weight to the fourth factor [objective unreasonableness]." *Id.*

the Film Defendants to independently analyze the works just to uncover the reality – which is that the works are dramatically different and share virtually no common expression. Plaintiff filed his Complaint including a chart of dozens of claimed "similarities" and the Film Defendants were forced to painstakingly dissect each of these claims, and to analyze three different versions of the Play that Plaintiff used interchangeably to suit whatever claimed similarity he was asserting at a given moment. The Court thoroughly analyzed the works and addressed Plaintiff's contrived and misleading attempts to argue otherwise:

> Furthermore, Plaintiff's list of similarities includes many over-generalizations of the works, and it often mischaracterizes one or both works. For example, Plaintiff alleges that both works' main characters "bond[] with the creature [in the laboratory] by scrubbing the floor to the rhythm of . . . music [playing on a record player], singing along with the record, and exchanging playful glances with the creature, who watches her intently from inside the glass." (Compl. ¶ 43(HH).) Except for the singing (Elisa is mute), this is an accurate description of a scene from the Film, but the only comparable scene in the Play is very different: Helen begins to hum along to music played as part of a scientific experiment and she scrubs in rhythm to it because she is in good spirits, but the dolphin is blocked off by a curtain at that time. (Play at 13.) Plaintiff's list of scattered alleged similarities therefore is not persuasive.

Order, p. 16. The Court summarized the works, explaining that "the Court finds that the Play and the Film actually do not share many similarities, protected or not." *Id.*

Here, as in *Shame on You* (and the cases cited therein), the differences between the works were "obvious," and a finding of objective unreasonableness is warranted. Plaintiff's tenuous and contrived claims of "similarity" of protectable expression were objectively unreasonable – Plaintiff argued that a dolphin was "substantially similar" to a humanoid Amazonian river-god that enters into a romantic and sexual relationship with the Film's protagonist. This type of false "similarity" is emblematic of Plaintiff's allegations in this lawsuit. It was not asserted in good faith, and should never have been alleged. Further, aside from the overwhelming differences between the works themselves, Plaintiff's repeated attempts to mischaracterize the works and to mislead the Court, Defendants, and the

public, were objectively unreasonable and support the Film Defendants' request for a fee award.

**5. Deterrence And Upholding The Goals of The Copyright Act.**

Awarding the Film Defendants their attorneys' fees would also be in conformance with the fifth factor, compensation and deterrence.

The Copyright Act's "primary objective is to 'encourage the production of original literary, artistic, and musical expression for the good of the public.'" *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (quoting *Fogerty*, 510 U.S. at 524). Here, an award of fees will serve to reward content creators and artists who defend against baseless claims, encouraging those parties to continue producing original works of authorship. *See Scott v. Meyer*, No. CV 09-6076 ODW, 2010 WL 2569286, *4 (C.D. Cal. June 21, 2010) *4 ("The successful defense against Plaintiff's copyright infringement claims will assure that Meyer's literary work remains available to the public, thus furthering the goal of 'stimulating artistic creativity for the general public good' and perhaps 'lead[ing] to further creative pieces…'").

Further, when claims are made based on mere ideas, ignoring the Copyright Act's critical idea/expression dichotomy, it is especially important that defendants are encouraged to resist such claims. Otherwise, copyright claimants may seek to file suits in order to monopolize ideas, thereby suppressing the very creativity that the Copyright Act is intended to promote. Indeed, the Central District has held that the successful defense against a baseless claim of infringement "nudged copyright law in the direction of 'free expression' by appealing to basic principles about the unprotectability of ideas, instead of relying on 'technical defense[s], such as the statute of limitations, laches, or the copyright registration requirements." *Mattel, Inc. v. MGA Ent., Inc.*, No. CV 04–9049 DOC (RNBx), 2011 WL 3420603, *2 (C.D. Cal. Aug. 4, 2011). Awarding the Film Defendants their attorneys' fees incurred in defending this suit encourages copyright owners to fight for the protect-

tion of their works, instead of paying "nuisance" or shakedown settlements in order to avoid the expense of protracted litigation, and also, in this case, in order to avoid publicity in the immediate run-up to the most popular awards ceremony in the film business.

An award of attorneys' fees would further serve to deter other baseless copyright suits, like Plaintiff's, which are brought against a copyright owner. *See Fogerty*, 510 U.S. at 534 n.19; *Zobmondo Entm't LLC v. Falls Media LLC*, No. CV 06-3459 ABC (JTLx), 2009 U.S. Dist. LEXIS 9306, at *9 (C.D. Cal. Jan. 23, 2009) (holding "baseless claims,…are inimical to the purposes of the Copyright Act" and "can chill creative expression resulting in the diminution of creative works" and [a]n award of attorney's fees would serve as a deterrent for such claims"); *Identity Arts v. Best Buy Enter.*, No. C 05-4656 PJH, 2008 U.S. Dist. LEXIS 119865, at *18 (N.D. Cal. Mar. 26, 2008) (holding "a fee award would…aid in deterring other would-be plaintiffs from prosecuting any similarly ill-advised and meritless claims for copyright infringement").

Here, considerations of deterrence, and of promoting creativity and expression, militate in favor of awarding fees.

**6. Balancing The Factors.**

Overall, the relevant factors strongly weigh in favor of awarding fees. The most significant factor, objective unreasonableness, clearly weighs in favor of the Film Defendants. Further, the Film Defendants achieved complete success on the merits of this claim. While a finding of bad faith is not necessary to an award of fees, this particular suit was brought in bad faith, and was motivated by an attempt to pressure the Film Defendants into settling in order to avoid bad publicity and the specter of plagiarism at a time when the Film was in the running for Best Picture at the Academy Awards. Finally, awarding fees in this case will serve the purposes of the Copyright Act, and will discourage others from filing unmeritorious suits alleging ownership of mere "ideas."

**C. Reasonableness of the Amount of Fees Requested.**

The reasonableness of an attorney's request for fees is determined by the "lodestar approach" set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under the lodestar calculation, a reasonable fee is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*

In determining the reasonableness of an attorney's rate, the Court must review the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984). The proper rate to employ in computing fees is that which a lawyer of comparable skill, experience and reputation would command in the relevant community. *Id.*

The hourly rates of the Film Defendants' counsel are reasonable. The Film Defendants' counsel are experienced in the area of copyright infringement, having litigated many copyright matters in this Court as well as in numerous other federal courts throughout the country. Zavin Decl., ¶¶ 8-12. The hourly rates requested by the Film Defendants are also in line with rates that have been previously approved by courts in this District. *See* Order, *Shame on You Prods.*, No. CV 14-03512-MMM (JCx) (C.D. Cal. Aug. 15, 2016), ECF No. 212 (approving rate of $595 for partner work performed in 2014); *Perfect 10 Inc.*, 2015 WL 1746484 at *15-16 (finding "reasonable and comparable" hourly fees for partners ranging from $610 to $930); *DuckHole*, 2013 WL 5797204 at *5 (approving rate of $580 an for partner work performed in 2012-2013 and holding that rate fell "within the range of rates charged by similarly situated attorneys in the Los Angeles area"); *see also Goldberg v. Cameron*, No. C-05-03523 RMW, 2011 WL 3515899, *7 (N.D. Cal. Aug. 11, 2011) (approving as reasonable billing rates of "$495 in 2006; $510 in 2007; and $550 in 2008 and 2009").

The paralegal work on this matter was performed by senior paralegals, with extensive experience litigating copyright infringement actions, and those paralegals

billed at the rate of between $195 and $250. Zavin Decl., ¶¶13-18. "Work performed by paralegals may be compensated as part of an attorney[s'] fee award." *Hirsch v. Compton Un. Sch. Dist.*, No. CV 12–01269 RSWL, 2013 WL 1898553, *3 (C.D. Cal. May 3, 2013). Other district courts have approved paralegal rates of up to $250 per hour. *See Hirsch*, 2013 WL 1898553 at *4 (awarding fees based on a $200 hourly rate for a paralegal); *Perfect 10, Inc.*, 2015 WL 1746484 at *21 (awarding fees at the rate of $240 per hour for a paralegal).

In this case, the Film Defendants incurred in excess of $206,121 in defending against Plaintiff's claims. Specifically, the Film Defendants incurred over two hundred fifty thousand dollars in defending this suit, including analyzing the works at issue, researching the claims made by Zindel and his relevant work, drafting the motion to dismiss Plaintiffs' complaint and the reply in support of that motion, coordinating with the Film Defendant clients and with the co-defendants, meeting and conferring about numerous issues with Plaintiff's counsel and preparing and filing the instant Motion. *See* Zavin Decl., ¶¶17-27. That fee amount was discounted as explained in the concurrently-filed Zavin Declaration, and the Film Defendants further reduced the fees sought after receiving Plaintiff's objections during the meet and confer period. Plaintiff has taken the position that no more than between fifty and sixty hours should have been spent drafting the briefs for the motion to dismiss, engaging with Plaintiff's counsel before the case was filed, during the litigation, and following the granting of the motions to dismiss. Plaintiff sued numerous defendants, and did so deliberately during a time when Plaintiff knew the Film Defendants would treat these claims with a greater degree of attention due to the non-legal issues discussed above that Plaintiff attempted to leverage to his advantage.

Moreover, Plaintiff's Complaint was 42 pages and contained dozens of claims relating to alleged similarities between the works. Plaintiff created a list of 61 purported "Overwhelming Similarities Between The Play and The Picture" and

included those alleged common elements in his Complaint. Defendants were forced to analyze each of these alleged similarities, in three different versions of the Play, ultimately determining that none of them had merit as a matter of copyright law.

Plaintiff has argued that the Film Defendants are not permitted to recover fees incurred prior to the filing of this Complaint, but after Plaintiff asserted a claim. Plaintiff is incorrect. *See Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC (RNBx); 2011 U.S. Dist. LEXIS 85998, at *38-39 (C.D. Cal. Aug. 4, 2011) ("Prevailing plaintiffs are permitted to recover fees incurred for essential pre-filing activity, and evenhandedness demands that defendants similarly recover fees incurred in the preparation of their defense against an imminent claim.") (citations omitted), *vacated on other grounds*, 705 F.3d 1108 (9th Cir. 2013).

Further, Plaintiff has objected to all fees sought on the grounds that they were billed per day, on a "block" basis, but there is no prohibition on such billing, and courts in this circuit have previously granted awards based on the same billing procedures. *See Trulock v. Hotel Victorville*, 92 Fed. Appx. 433, 434 (9th Cir. 2004) ("While block billing creates some impediments to the analysis of attorney fee bills, the Supreme Court has indicated that it is not a basis for refusing to award attorneys' fees. … Accordingly, the use of block billing is not a per se deprivation of due process of law."); *see also Ryan v. Editions Ltd. West*, 786 F.3d 754, 765-66 (9th Cir. 2015) ("the district court may reduce the requested fee amount to account for block billing and improperly claimed interest, but it must ''explain how or why . . . the reduction . . . fairly balance[s]' those hours that were actually billed in block format' and how it determined the percentage of reduction to apply") (reversing "across-the-board twenty-percent reduction" applied to block-billed entries). Further, in this case, while the exact time spent on each task was not broken down in the time entry for the day, there was a specific description of each task performed during the period, so the Plaintiff and the Court can review the tasks performed in each period of time.

Per Fed. R. Civ. P. 54(d)(2)(B), the amount sought in fees and costs in this matter is set forth in the accompanying declaration of Jonathan Zavin along with the joint spreadsheet that was prepared in accordance with the Court' s Order. In response to Plaintiff's objections in connection with the Court's pre-filing meet and confer process, the Film Defendants agreed not to seek fees that were incurred in January, or in early February. Zavin Decl., ¶26. Although those fees were incurred in defense of this lawsuit, the Film Defendants agreed to restrict their fees sought to those that were incurred after February 14, 2018, when an imminent threat of litigation was made by Plaintiff's current counsel. Further, the Film Defendants have not sought the fees that were incurred in mid-August and September, while meet and conferring with Plaintiff and finalizing the joint spreadsheet and this Motion. *Id.*

## III. CONCLUSION

The Film Defendants respectfully request that the Court grant this Motion for Attorneys' Fees.

Dated: October 1, 2018

LOEB & LOEB LLP
JONATHAN ZAVIN (*pro hac vice*)
DAVID GROSSMAN
EDWARD K. LEE

By: *\/s/ David Grossman*
David Grossman
Attorneys for Defendants FOX SEARCHLIGHT PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, TSG ENTERTAINMENT FINANCE, LLC, GUILLERMO DEL TORO and DANIEL KRAUS